492 So.2d 545 (1986)
Sharon A. ALUMBAUGH, Plaintiff-Appellant,
v.
MONTGOMERY WARD & COMPANY, INC., Defendant-Appellee,
American Motorist Insurance Company, Intervenor-Appellant.
No. 85-964.
Court of Appeal of Louisiana, Third Circuit.
July 23, 1986.
Writ Denied October 17, 1986.
Reuvan Rougeau, Lake Charles, for plaintiff-appellant.
Plauche, Smith & Nieset, Charles V. Musso, Lake Charles, for intervenor-appellant.
Raggio, Cappel, Chozen & Berniard, Richard B. Cappel, Lake Charles, for defendant-appellee.
Before DOMENGEAUX, DOUCET and YELVERTON, JJ.
DOMENGEAUX, Judge.
This is an appeal by plaintiff-appellant, Sharon A. Alumbaugh, and intervenor-appellant, American Motorist Insurance Company, Mrs. Alumbaugh's employer's worker's compensation insurer, from a judgment notwithstanding the verdict in favor of defendant-appellee, Montgomery Ward & Company, Inc.
The plaintiff filed this tort suit alleging that she had slipped and fallen in the defendant's store thereby causing her personal injury. American Motorist Insurance Company intervened in the suit to recover *546 the amount of worker's compensation benefits and medical expenses it paid to plaintiff because of the alleged injury.
After a trial on the merits, the jury found that Montgomery Ward was 100% negligent in causing Mrs. Alumbaugh's injuries and awarded her $133,000.00 in damages. The defendant however, moved for, and was granted a judgment notwithstanding the verdict by the trial judge. The plaintiff and intervenor appeal the judgment of the district court.
The plaintiff was a temporary, holiday season employee of Hickory Farms of Ohio. Hickory Farms operated a store in the Prien Lake Mall in Lake Charles, Louisiana, during the Christmas season. On December 14, 1983, between 5 o'clock and 5:30 P.M., the plaintiff accompanied a co-employee, Mrs. Simmone Rogers,[1] to the Montgomery Ward store in the same mall in order to make change for the Hickory Farms store. After making the change, the plaintiff and Mrs. Rogers were exiting the Montgomery Ward store when the plaintiff alleged that she stepped upon either a piece of popcorn or a piece of foam packing material and slipped and fell.
The plaintiff alleges that she returned to the Hickory Farms store where she and Mrs. Rogers filled out an accident report for her employer. At approximately 8:30 P.M. on that same evening, the plaintiff, accompanied by her husband, returned to the Montgomery Ward store to report the alleged accident to Montgomery Ward's loss prevention supervisor, Noel Doyle.
Mrs. Alumbaugh claims that about two hours after the fall she began to experience pain in her back, and for the next several days she attempted to treat the injury herself. As she was experiencing no relief, on December 20, 1983, she was examined by Doctor Charles Fellows, a family practitioner, who treated her condition with rest, muscle relaxants and pain medication.
During the course of the next year the plaintiff was examined by three orthopedic surgeons, which encompassed clinical examinations, as well as x-ray, CAT scan, and myelogram testing.
On December 6, 1984, the plaintiff filed suit against Montgomery Ward & Company, Inc. seeking damages for the injuries she allegedly sustained as a result of the slip and fall.
Shortly thereafter, American Motorist Insurance Company, Hickory Farms' worker's compensation insurer intervened in the lawsuit seeking to recover the worker's compensation benefits and medical expenses it paid to the plaintiff.
At the trial on the merits, the plaintiff attempted to prove that the accident occurred by offering the testimony of Mrs. Alumbaugh and her co-employee, Mrs. Rogers. The plaintiff and her witness testified about the events surrounding the accident, the accident itself, and the accident scene. The defense counsel, on cross examination, attempted to discredit their testimony at trial by comparing it to earlier statements which the two witnesses had made and by contrasting the testimony of the two witnesses.
Mrs. Alumbaugh also testified that in 1979 she had undergone a laminectomy and fusion to her lumbar and lower back area as a result of a slip and fall accident. The plaintiff further testified that she had a congenital defect in her back, which she described as a "missing bone", that had caused her problems since birth.
The plaintiff also called four expert medical witnesses to the stand in an attempt to prove the extent of her alleged injuries.
At the close of the evidence the jury was provided with a verdict form in which they found that Montgomery Ward was 100% negligent in causing the plaintiff's injuries and awarded her $133,000.00 in damages. Pursuant to the jury's verdict the district judge signed a judgment granting the plaintiff $133,000.00 with legal interest thereon. It was further ordered that from these proceeds American Motorist Insurance Company be paid $6,074.44 for the compensation benefits it paid to plaintiff, *547 $7,835.62 for the medical expenses incurred on plaintiff's behalf, as well as any additional proceeds which the intervenor would be required to pay on behalf of plaintiff in the future.
The defendant then moved for and, following a hearing, was granted a judgment notwithstanding the verdict. In written reasons for granting the judgment non obstante veredicto the trial judge stated:
"The court noted during trial and the reading of the court's charge that many of the jurors were inattentive. During some testimony that was of critical importance to one side or the other, it was obvious many jurors were not listening and seemed to be bored with the proceedings.
The question sent to the court during the jury's deliberations, together with its verdict which bears no relationship in fact to the issues of the trial, demonstrate clearly that the jury did not understand the issues or the testimony of the witnesses.
The failure of the jury to apply the facts and law has resulted in a verdict the court considers a travesty of justice. The expert medical testimony overwhelmingly preponderated in showing that plaintiff had received no injury or aggravation of a pre-existing condition. Testimony concerning a fall was not sufficient to render defendant strictly liable under the circumstances. Plaintiff and the only witness to the alleged fall had made prior inconsistent statements which caused their testimony at trial to be unreliable."
An examination of the district judge's written reasons for granting the judgment notwithstanding the verdict evinces his conclusion that the plaintiff had failed to prove either liability or damages. We take this to mean that the judgment notwithstanding the verdict was granted on the issues of both liability and damages as is provided for in La.C.C.P. Art. 1811 F.
The plaintiff and intervenor appealed the decision of the district judge granting the judgment notwithstanding the verdict alleging basically that the jury had not committed manifest error and that consequently the district judge's decision to grant a judgment notwithstanding the verdict was erroneous. Although not for the exact reasons propounded in the appellant's brief, we find that the district judge erred when he granted the defendant's motion for a judgment notwithstanding the verdict. We are of the opinion that the district judge applied the wrong standard for determining whether a judgment notwithstanding the verdict should be granted.
The standard of proof which the trial judge is to use in deciding a motion for judgment notwithstanding the verdict under La.C.C.P. Article 1811 has been set forth by this Court in Rougeau v. Commercial Union Insurance Company, 432 So.2d 1162 (La.App. 3rd Cir.1983), where we stated that:
"We conclude that the standard for determining the propriety of granting a judgment notwithstanding the verdict is the same as used to determine whether a directed verdict should be granted. Boeing v. Shipman, 411 F.2d 365 (5th Cir. 1969); Lubbock Feed Lots, Inc. v. Iowa Beef Processors, 630 F.2d 250 (5th Cir. 1980); Wright and Miller, Federal Practice and Procedure, Volume 9, sec. 2537, page 599.
In the present case the trial judge correctly adopted the standard to be applied in deciding whether a motion for judgment notwithstanding the verdict should be granted. The court's written reasons reflect its rationale:
`Louisiana courts adopted the standard for ruling on a motion for a directed verdict applied by the Federal courts. That standard was enunciated by the Third Circuit in Campbell v. Mouton, 373 So.2d 237 (La.1979), which quoted the following language of the U.S. Fifth Circuit Court of Appeal in Boeing v. Shipman, 411 F.2d 365 (5th Cir.1969):'
`On motions for directed verdict and for judgment notwithstanding the verdict the Court should consider all of *548 the evidencenot just that evidence which supports the non-mover's case but in the light and with all reasonable inferences most favorable to the party opposed to the motion. If the facts and inferences point so strongly and overwhelmingly in favor of one party that the Court believes that reasonable men could not arrive at a contrary verdict, granting of the motions is proper. On the other hand, if there is substantial evidence of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions, the motions should be denied, and the case submitted to the jury.'"
This Court then went on to more fully explain and enunciate what is meant by the "reasonable inferences" which the trial court must consider in a light favorable to the non-mover party:
"The party against whom a motion for judgment notwithstanding the verdict is made must be given the benefit of every legitimate and reasonable inference that can be drawn from the evidence by the jury. However the court is not bound by inferences which are unreasonable.
`It is the province of the jury to resolve conflicting inferences from circumstantial evidence, but permissible inferences must still be within the range of reasonable probability. It is the duty of the court to withdraw a case from the jury when a necessary inference is so tenuous that it rests merely upon speculation and conjecture.' Ford Motor Co. v. McDavid, 259 F.2d 261, 266 (4th Cir.1958) cert. denied, [358 U.S. 908] 79 S.Ct. 234 [3 L.Ed.2d 229].
There is no bright line which enables the court to distinguish between the reasonable, legitimate inference and the unreasonable, illegitimate inference. There is no precise rule to follow. The court can only test the reasonableness of the inferences drawn by jury from the evidence in terms of probability. An inference is legitimate only where the evidence offered makes the existence of the fact to be inferred more probable than not. Any lesser test would allow the jury to rest a verdict on speculation or conjecture." Rougeau, supra.
We understand the standard as set out in Rougeau to mean that a motion for a judgment notwithstanding the verdict can only be granted by the district judge when, without weighing the credibility of the evidence or the witnesses, there cannot be but one reasonable conclusion as to the correct and proper judgment. Where there is such evidence upon which reasonable men might render a verdict in favor of the non-moving party, or where there is conflicting evidence, a judgment notwithstanding the verdict should not be awarded.
In this case the district judge's written reasons for granting the judgment notwithstanding the verdict state that it was in part based upon insufficient proof of the alleged fall because inconsistencies in the plaintiff and her witness' testimony made their "testimony at trial ... unreliable." This statement can only mean that the district judge considered the credibility of the plaintiff and her witness as one of the factors in determining that a judgment notwithstanding the verdict should be granted. Clearly this was error, as Rougeau, supra, prohibits the district judge from passing on the credibility of the witnesses in granting a judgment notwithstanding the verdict.
Secondly, after a thorough and exhaustive review of the expert medical testimony in this case we can conclude that there was such evidence upon which reasonable men might have concluded that the plaintiff sustained an injury. The district judge's reasons for granting the judgment notwithstanding the verdict opined that the expert medical testimony "overwhelmingly preponderated in showing that plaintiff had received no injury or aggravation of a pre-existing condition."
The plaintiff was examined by four physicians as a consequence of this alleged accident. A myriad of diagnostic procedures were performed to ascertain whether *549 or not she was injured, and if so, to what extent. The four physicians explained that they were aware of the plaintiff's history and that she was alleging a fall had given rise to a new injury.
Each of the four physicians who testified, maintained that it was their belief based upon their examinations that the plaintiff did not receive a true disc injury, but all of them agreed that plaintiff had a soft tissue injury. All of the physicians suggest that the subjective symptoms which the plaintiff described were consistent with the symptoms described by a victim of a slip and fall accident, inasmuch as plaintiff had informed them of her alleged fall. Two of the physicians testified that the plaintiff exhibited the objective symptom of a muscle spasm in her lower back.
Based upon the conclusions of the physicians, there was sufficient evidence upon which a juror might legitimately and reasonably infer that the plaintiff injured her back in the alleged slip and fall.
In viewing the record in this case as a whole, considering both the evidence presented by the plaintiff and the evidence and rebuttal provided by the defendant, we can readily conclude that the facts in this case did not point so strongly and overwhelmingly in favor of the defendant that a reasonable juror could not have possibly decided in favor of the plaintiff. Certainly, when considering the evidence, and all reasonable inferences drawn therefrom, in a light most favorable to the plaintiff, we can see where "fair minded men in the exercise of impartial judgment, might reach different conclusions" as to the correct and proper judgment. On the whole we find that there was sufficient evidence in the record upon which a reasonable juror might have reached the conclusion that the plaintiff had proved liability and damages. For these reasons we hold that the district court judge erred when he granted the judgment notwithstanding the verdict.
We therefore conclude that on the issue of liability the initial verdict of the jury should be reinstated. This conclusion is premised upon the finding of sufficient evidence in the record with which a reasonable juror might have found that a slip and fall accident had occurred because of the acts or omissions of the defendant or its employees. This holding effectively results in a finding of liability on the part of the defendant.
The district judge's grant of the judgment notwithstanding the verdict on the issue of damages was based upon his conclusion that the plaintiff failed to prove an injury or an aggravation of a pre-existing condition. By dismissing the plaintiff's case the district judge in effect awarded the plaintiff no monetary recompense.
Under La.C.C.P. Art. 2164 Courts of Appeal are empowered to award damages in cases where the trier of fact initially rejected the plaintiff's demands, and the record is complete with regard to damages. Dupree v. Louisiana Transit Management, 441 So.2d 436 (La.App. 2nd Cir.1983). In this particular instance the trier of fact was the district judge pursuant to his grant of the judgment notwithstanding the verdict. As we have already stated the district court's rejection of the plaintiff's demands on the issue of liability were in error.
We have also stated, supra, that there was sufficient evidence in the record upon which a reasonable juror might have concluded that the plaintiff received an injury or an aggravation of a pre-existing injury. We therefore conclude that based upon Article 2164 and Dupree, supra, that it is incumbent upon this Court to make a determination on the issue of damages.
Insofar as an award for damages is concerned, all of the doctors who testified stated that the plaintiff had received a soft tissue injury. The consensus of the medical testimony was that the plaintiff would recover from the soft tissue injury. However, the plaintiff did testify as to a congenital defect in the back as well as a prior injury to the discs in her back. One physician stated that if the soft tissue injury is coupled with a symptomatic degenerative disc the plaintiff may never get better.
*550 There is very little evidence on the issue of the plaintiff's loss of income other than her own self-serving testimony. The plaintiff complains that she can no longer hold a job or do her domestic duties.
Based upon the record before us we find that the $133,000.00 initially awarded by the jury is excessive. We find that the evidence supplied by the plaintiff on the issue of damages justifies a damage award of $50,000.00. We conclude that the sum of $50,000.00 is the highest amount which could have been awarded without an abuse of discretion. This sum, incidently, is the amount of damages which the defendant, in a motion for remittitur, considered as the highest award a juror might reasonably have awarded the plaintiff without abusing his discretion.
For the above and foregoing reasons the decision of the district judge which granted the defendant's motion for a judgment notwithstanding the verdict is reversed. The jury verdict on the issue of liability is reinstated. Further let there be judgment in favor of plaintiff and against defendant, Montgomery Ward & Company, Inc., in the amount of $50,000.00, with legal interest thereon from date of judicial demand until paid. From these proceeds, American Motorists Insurance Company is to be paid $6,074.44 for the compensation benefits it paid to plaintiff, $7,835.62 for the medical expenses incurred on plaintiff's behalf, as well as any additional sums the intervenor is required to pay on plaintiff's behalf.
All costs at trial and on appeal to be assessed against appellee.
REVERSED AND RENDERED.
NOTES
[1] Mrs. Rogers was the Manager of the Hickory Farms store.