575 So.2d 458 (1991)
Owen J. JOHNSON, et ux., Plaintiffs-Appellants,
v.
AETNA CASUALTY & SURETY COMPANY, et al., Defendants-Appellees.
No. 89-825.
Court of Appeal of Louisiana, Third Circuit.
February 6, 1991.
Rehearing Denied March 8, 1991.
Writ Denied May 2, 1991.
Broussard, Bolton, Halcomb & Vizzier, Daniel E. Broussard, Jr., Alexandria, for plaintiffs-appellants.
*459 Stockwell, Sievert, Viccellio, Clements & Shaddock, Robert W. Clements, Lake Charles, for defendants-appellees.
Before GUIDRY, STOKER and DOUCET, JJ.
STOKER, Judge.
This is an appeal by plaintiffs-appellants, Owen J. Johnson and Helen Johnson, from a judgment notwithstanding the verdict in favor of defendant-appellee, St. Patrick Hospital of Lake Charles. For the reasons discussed below, we reverse the judgment of the trial court and reinstate the jury verdict in favor of Mr. Johnson. We award Mrs. Johnson $3500 in damages for her loss of consortium.

FACTS
The plaintiffs, husband and wife, filed a medical malpractice suit alleging that the plaintiff-husband, Mr. Johnson, suffered a personal injury while hospitalized in the defendant-hospital from February 7 until February 14, 1985 for a surgical operation. During this period of hospitalization one or more catheters were inserted and removed from Mr. Johnson's body. Later a catheter segment was discovered and removed from Mr. Johnson's body. This discovery occurred on or about February 21, 1986, when Mr. Johnson underwent surgery performed by Dr. L.P. Perkins in Sulphur, Louisiana. The dispute in this case involves when and how the catheter segment became lodged in Mr. Johnson's body.
Dr. John R. Enright testified that Mr. Johnson entered the defendant-hospital on February 8, 1985 for a penile implant. After the successful surgical operation, Dr. Enright inserted a straight catheter into Mr. Johnson's body in order to drain urine from the urinary bladder. The nurses' notes reflect that on February 9, 1985 the catheter inserted by Dr. Enright "fell out." The medical testimony does not clearly establish the reason the catheter fell out of Mr. Johnson's body. In any event, Dr. Enright ordered that a new catheter be inserted.
On February 9, 1985, an orderly employed by the defendant-hospital inserted the new catheter. Subsequently, Dr. Enright ordered that the new catheter be removed in preparation for the plaintiff's discharge from the hospital. An orderly removed the catheter in accordance with the doctor's orders on February 10, 1985. On February 11, Mr. Johnson complained of experiencing difficulty in voiding. Dr. Enright testified that as a result of those complaints, he ordered that a Coude catheter be inserted into Mr. Johnson. On February 11, a Coude catheter was inserted by an orderly. No one else was present when the orderlies inserted and removed the various catheters from Mr. Johnson's body.
According to Mr. Johnson's uncontradicted testimony, he had never experienced difficulty or pressure in voiding prior to the February 1985 hospitalization. Further, he testified that he had never been catheterized before the surgical procedure in February 1985. Nevertheless, Mr. Johnson experienced difficulty and discomfort in urination after the insertion and subsequent removal of both the new catheters described above. These complaints continued after the plaintiff's discharge from the hospital, causing him to seek a second opinion from Dr. L.P. Perkins. Thinking Mr. Johnson was experiencing prostate enlargement, Dr. Perkins scheduled surgery for February 1986. During the surgery, Dr. Perkins discovered a six to eight inch piece of catheter tubing resting across a portion of the plaintiff's bladder. At that time Dr. Perkins elected not to proceed with the prostate operation, recognizing that the tubing was the cause of Mr. Johnson's voiding difficulties. Dr. Perkins testified that the removal of the catheter segment and a subsequent antibiotic treatment left the plaintiff with no residual disability.

TRIAL COURT ACTION
The plaintiffs filed suit against St. Patrick Hospital of Lake Charles, the manufacturer of the offending catheter and its insurer. The plaintiffs later dismissed the manufacturer and its insurer. The plaintiffs alleged in their suit that the defendant-hospital's employees failed to adhere *460 to accepted standards of hospital care. After a trial by jury, the jury found the defendant-hospital liable for the injuries sustained by the plaintiffs. The jury awarded the plaintiff-husband $25,600 in damages and awarded the plaintiff-wife $400 for loss of consortium. The defendant-hospital filed a motion for a judgment notwithstanding the verdict directed to the liability question. The plaintiff-wife also filed a similar motion in which she asked for an increase in her award. The trial judge granted the motion of the defendant-hospital, denied the motion of the plaintiff-wife and set aside the verdict of the jury. The plaintiffs appeal these rulings of the trial judge.

ASSIGNMENTS OF ERROR
Plaintiffs-appellants urge six assignments of error which can be summarized as two issues presented on appeal: (1) whether the trial court erred in granting a judgment notwithstanding the verdict in favor of the defendant-hospital; and (2) whether the trial court erred in denying the judgment notwithstanding the verdict of plaintiff, Helen Johnson, on the grounds that the sum awarded to her by the jury constituted an abuse of the jury's discretion in assessing damages.

STANDARD FOR JUDGMENT NOTWITHSTANDING THE VERDICT
The case of Rougeau v. Commercial Union Insurance Company, 432 So.2d 1162 (La.App. 3d Cir.), writ denied, 437 So.2d 1149 (La.1983), sets forth the standard of proof which the trial judge must use in deciding a motion for judgment notwithstanding the verdict under LSA-C.C.P. art. 1811. In that case we stated that:
"We conclude that the standard for determining the propriety of granting a judgment notwithstanding the verdict is the same as used to determine whether a directed verdict should be granted. Boeing v. Shipman, 411 F.2d 365 (5th Cir. 1969); Lubbock Feed Lots, Inc. v. Iowa Beef Processors, 630 F.2d 250 (5th Cir. 1980); Wright and Miller, Federal Practice and Procedure, Volume 9, sec. 2537, page 599.
"In the present case the trial judge correctly adopted the standard to be applied in deciding whether a motion for judgment notwithstanding the verdict should be granted. The court's written reasons reflect its rationale:
"`Louisiana courts adopted the standard for ruling on a motion for a directed verdict applied by the Federal courts. That standard was enunciated by the Third Circuit in Campbell v. Mouton, 373 So.2d 237 (La.1979), which quoted the following language of the U.S. Fifth Circuit Court of Appeal in Boeing v. Shipman, 411 F.2d 365 (5th Cir. 1969):
"'"On motions for directed verdict and for judgment notwithstanding the verdict the Court should consider all of the evidencenot just that evidence which supports the non-mover's case but in the light and with all reasonable inferences most favorable to the party opposed to the motion. If the facts and inferences point so strongly and overwhelmingly in favor of one party that the Court believes that reasonable men could not arrive at a contrary verdict, granting of the motions is proper. On the other hand, if there is substantial evidence of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions, the motions should be denied, and the case submitted to the jury."` "Rougeau at p. 1166.
The court in Alumbaugh v. Montgomery Ward & Company, Inc., 492 So.2d 545 (La.App. 3d Cir.), writ denied, 495 So.2d 304 (La.1986), summarized the standard of proof first enunciated in Rougeau by stating:
"We understand the standard as set out in Rougeau to mean that a motion for a judgment notwithstanding the verdict can only be granted by the district judge when, without weighing the credibility of the evidence or the witnesses, there cannot be but one reasonable conclusion *461 as to the correct and proper judgment. Where there is such evidence upon which reasonable men might render a verdict in favor of the non-moving party, or where there is conflicting evidence, a judgment notwithstanding the verdict should not be awarded." Alumbaugh at p. 548.

JUDGMENT NOTWITHSTANDING THE VERDICT IN FAVOR OF HOSPITAL
Applying the standard of proof which the trial judge should have used in deciding the motion, it is clear that he could not pass on the credibility of the witnesses in granting the judgment notwithstanding the verdict. Therefore, we must determine whether, without weighing the credibility of the evidence or witnesses, there could be but one reasonable conclusion as to the correct and proper judgment. After a thorough review of the testimony of the witnesses, documents and the expert medical testimony, we conclude there was evidence from which reasonable men might have concluded that the defendant-hospital, its agents, servants or employees, were guilty of negligence or fault which caused the injuries suffered by the plaintiffs.
Owen J. Johnson entered St. Patrick for a penile implant in February 1985. He was discharged from the hospital several days later with a severe urinary problem consisting of a difficulty or pressure in voiding and an inability to urinate in a standing or sitting position. These complaints continued after the discharge from the hospital until a catheter segment was discovered and removed from the plaintiff's body in February 1986. Mr. Johnson had never been catheterized before the February 1985 hospitalization and was not catheterized again until after the discovery of the catheter segment in February 1986. In her testimony Helen Johnson corroborated these facts and complaints.
The testimony of the orderlies employed by the defendant-hospital clearly establishes that they received little training for their jobs, and at least in reference to the care of the plaintiff-husband, they received no direct supervision with the insertion and removal of the catheter tubing. Although the orderlies did not make a note of any difficulty they may have experienced with the catheter procedures at issue in this case, we do not believe that fact is dispositive. As Dr. Perkins stated, "... if I had cut off a catheter tube and left half of it in a patient, if I were an orderly and did that, I'm sure I wouldn't put it in the medical records."
The defendant-hospital defends this action by denying that the catheter in question could have been present in Mr. Johnson's bladder for a year. Four medical experts testified for St. Patrick, including Dr. Enright. Defendant's experts based their opinions on the following facts. The piece of catheter removed by Dr. Perkins appeared to be like new and was not discolored. The catheter segment bore no encrustations, and Mr. Johnson's bladder showed no evidence of irritation of the bladder lining or of infection. In the opinions of Dr. Lehrue Stevens and Dr. Joseph Brierre it was absolutely impossible for the catheter to have been present in a human bladder for a year without development of encrustations. Their opinions were reinforced by the fact that urinalysis results from March and December 1985 indicated no infection of the bladder. Dr. Reed A. Fontenot, Jr. testified that there was no reasonable medical probability that the catheter could reside in Mr. Johnson's bladder for a year without development of encrustations. Dr. Enright was equally unconvinced, although he stated that a catheter could remain in a bladder for as much as a year without developing encrustations or discoloration if a patient had a high fluid intake and his urine remained acid most of the time. However, he was not convinced this was the case with Mr. Johnson.
The testimony of Dr. Perkins was opposed to that of defendant's medical experts. He testified that medical literature contained "some information suggesting that gross encrustations don't occur over a period of time ranging from months to greater than a year in objects within the bladder." Dr. Perkins stated that neither the absence of encrustations nor the absence *462 of irritation of the bladder would rule out the possibility of the catheter having been present in Mr. Johnson's body for a year. Although Dr. Perkins' opinions were diametrically opposed to the opinions of defendant's experts, Dr. Perkins gave testimony supporting his opinion which, in our opinion, could have been accepted by reasonable and fair-minded jurors.
Finally, the defendant-hospital argues that the catheter tubing should have been discovered by a cystoscopy if it had remained in the plaintiff's body since the February 1985 procedure. Dr. Perkins performed a cystoscopy on Mr. Johnson in December 1985 and again in February 1986. The latter procedure took place immediately before the discovery of the lodged catheter tubing. Neither procedure indicated the presence of a foreign substance in Mr. Johnson's bladder. Nevertheless, it is clear that, although a cystoscopy did not detect the presence of the catheter tubing in February 1986, the tubing was discovered by Dr. Perkins moments after making an incision to enter the urinary tract. Dr. Perkins explained that as a result of the rigid penile prosthesis implanted in Mr. Johnson in February 1985, the scope could not be manipulated to view all of the angles within the bladder.
In summary, this case presents a situation in which the facts as presented by plaintiff, Owen J. Johnson, are contradicted solely by defendant's medical experts who said such facts could not have occurred. On the other hand, at least one medical expert supported the possibility of Johnson's version of the facts being correct. In oral argument, in response to a question from the bench, counsel for the defendant suggested that there was at least one possible explanation for the presence of the catheter segment in Johnson's bladder other than the negligence of the hospital's employees or agents. Counsel referred to hospital notes from West Calcasieu-Cameron Hospital indicating an attempt to catherize Mr. Johnson on the night of January 21, 1986 prior to surgery which resulted in Dr. Perkins' discovery of the catheter segment in Mr. Johnson's body. We find a notation on a "Nurses Patient Progress Record" for January 20, 1986 reading: "2210-EMT attempted to put foley inunsuccessful. Dr. Perkins notified and orders rec'd." Tr. 169. A notation entered at 2345 reads: "2345EMT catherized (attempted) pt c # 10 Fr. straight cath.unable to get it all the way in. Succeeded c # 8 infant feeding tube c no return." Tr. 170. We are unable to say that these notations are meaningful beyond what they say.
Based upon the complete record in this case we conclude that the facts do not point so strongly and overwhelmingly in favor of the defendant-hospital that reasonable and fairminded jurors could not have possibly decided in favor of the plaintiffs. Reasonable jurors might have found that a personal injury had occurred because of the acts or omissions of the defendant-hospital or its employees. Accordingly, we hold that the trial judge erred in granting the judgment notwithstanding the verdict in favor of the defendant-hospital. We reverse the trial court's ruling on this issue and reinstate the jury award in favor of the plaintiff-husband in the amount of $25,600.

JUDGMENT NOTWITHSTANDING THE VERDICT OF HELEN JOHNSON
The trial judge's grant of the judgment notwithstanding the verdict in favor of the defendant-hospital and its denial of the judgment notwithstanding the verdict of plaintiff, Helen Johnson, were presumably based upon his conclusion that the plaintiffs failed to prove that Owen J. Johnson sustained injury caused by the negligence of the defendant-hospital. As a result, the predicate for Helen Johnson's loss of consortium claim was lacking. Under our ruling Helen Johnson is entitled to damages. However, Helen Johnson appeals the jury's award of $400 for her loss of consortium and contends that the amount awarded is inadequate.
In Alumbaugh, supra, we enunciated our power as a reviewing court to award damages in cases where the trier of fact initially rejected the plaintiff's demands. We stated:

*463 "Under La.C.C.P. Art. 2164 Courts of Appeal are empowered to award damages in cases where the trier of fact initially rejected the plaintiff's demands, and the record is complete with regard to damages. Dupree v. Louisiana Transit Management, 441 So.2d 436 (La.App. 2nd Cir.1983). In this particular instance the trier of fact was the district judge pursuant to his grant of the judgment notwithstanding the verdict. As we have already stated the district court's rejection of the plaintiff's demands on the issue of liability were in error.
"We have also stated, supra, that there was sufficient evidence in the record upon which a reasonable juror might have concluded that the plaintiff received an injury or an aggravation of a pre-existing injury. We therefore conclude that based upon Article 2164 and Dupree, supra, that it is incumbent upon this Court to make a determination on the issue of damages." Alumbaugh, at p. 549.
Also see Webb v. Goodley, 512 So.2d 527 (La.App. 3d Cir.1987).
Inasmuch as we reverse the trial court's denial of the judgment nothwithstanding the verdict as to Helen Johnson's claim, we must make a determination on the issue of damages awarded to her. The fact that the jury found that Helen Johnson was entitled to loss of consortium damages but, nevertheless, found her damages to amount to only $400 presents an interesting question. Considered against the existing mass of cases, the award would appear to be unreasonably low. For this reason we will endeavor to discover what might have been the jury's thinking, and if we discern the reasons, we will test the award against the existing jurisprudence.
After thoroughly reviewing the record and jurisprudence in this case, we conclude that the jury award of $400 constituted an abuse of discretion. Mr. and Mrs. Johnson testified that Mr. Johnson suffered the thoroughly humiliating disability of being forced to urinate in a supine position for over a year's time. As a result, the home shared by the plaintiffs often smelled of urine. In addition, the plaintiff suffered an extreme discomfort and pain upon voiding. Therefore, the couple's travel plans, social life and marital relations were greatly interrupted and drastically curtailed. Specifically, Mrs. Johnson testified that during the year of disability the couple could not travel, could not attend business meetings, could not visit with friends and could not have friends visit their home. Mr. Johnson's disability was not resolved until sometime in February 1986. Therefore, for a year's period of time Mrs. Johnson was deprived of the enjoyment of the quality of marital life previously shared with her husband.
Following the authorization of the award of damages for loss of consortium in 1982 (LSA-C.C. 2315B), courts have attempted to outline the elements of such claims. Finley v. Bass, 478 So.2d 608 (La.App. 2d Cir. 1985); Sharp v. Metro. Property and Liability Ins., 478 So.2d 724 (La.App. 3d Cir. 1985) and Lonthier v. Northwest Ins. Co., 497 So.2d 774 (La.App. 3d Cir.1986). In Finley v. Bass, supra, the Court of Appeal for the Second Circuit broke down loss of consortium into seven kinds of losses: love and affection, society and companionship, sexual relations, right of performance of material services, right of support, aid and assistance and felicity. In Lonthier v. Northwest Ins. Co., we analyzed a loss of consortium claim in terms of loss of society (which we characterized as love, companionship or affection), sexual relations and material services.
In Sharp v. Metro. Property and Liability Ins., supra, we noted that a loss of consortium claim should be distinguished from the mental anguish suffered by an uninjured third party. In Deville v. K-Mart Corp., 498 So.2d 1122 (La.App. 3d Cir.1986), where a husband asserted a loss of consortium claim resulting from the disability of his wife caused by injury, we observed the need to distinguish items recoverable by the husband as special damages from loss of consortium as a general damage. Special damages in Deville included the cost of maid services and the cost of hiring a replacement for Mrs. Deville to work in the family convenience *464 store. See also Morris v. Highlands Ins. Co., 525 So.2d 125 (La.App. 3d Cir.1988).
In some cases juries and courts have found proof insufficient to support a loss of consortium claim. Vidrine v. Government Employees Ins. Co., 528 So.2d 765 (La.App. 3d Cir.), writ denied, 532 So.2d 156 (La.1988); Johnmeyer v. Creel, 499 So.2d 571 (La.App. 2d Cir.1986); Lonthier v. Northwest Ins. Co., supra. In other cases, opinions contain little discussion of the basis for making an award. In Morris v. Highlands Ins. Co., we approved a trial judge's $10,000 loss of consortium award in favor of a husband because of his wife's injuries, saying only that it was established at trial that the wife's "physical infirmities have put a strain on the marriage." The Court of Appeal for the Second Circuit used similar language in Rodgers v. National Dealer Services, Inc., 508 So.2d 1007 (La.App. 2d Cir.), writs denied, 512 So.2d 1183 and 513 So.2d 1211 (La.1987), in approving an award to a wife for loss of consortium. The Second Circuit said: "The trial court noted that Rodgers' injuries had caused a strain in the couple's relationship, in that Rodgers had become irritable, depressed, and had experienced a diminished sexual motivation." Rodgers, at p. 1012. On this basis, and after reference to its Finley case, the Court of Appeal approved the lower court award of $7500 as not too low.
The Court of Appeal for the First Circuit referred to Finley in Sexton v. Louisiana Vacuum Services, Inc., 506 So.2d 780 (La. App. 1st Cir.1987), but observed that a claim need not prove entitlement to damages from every category listed in Finley. The First Circuit approved a $10,000 consortium to a wife. The Sexton court said at page 784:
"In Finley v. Bass, 478 So.2d 608 (La. App. 2nd Cir.1985), the court broke down the concept of `consortium' into the following aspects: loss of love and affection; loss of society and companionship; loss of sexual relations; loss of performance of material services; loss of support from the spouse; and loss of aid and assistance.
"Although we do not feel that Shirley Sexton proved that she was entitled to damages from every category listed above, we feel that the jury was not manifestly erroneous in awarding her $10,000.00 for the damages proven at trial.
"She testified that after his nine-day hospital stay, her husband could not take care of himself at all. She was responsible for giving him his medication and baths, and performing the duties of a full-time registered nurse. Gerald Sexton found sleeping in a bed uncomfortable, so he would sleep sitting in a chair. Shirley Sexton would become tense and nervous, fearing he would fall forward and reinjure himself, so she would stay awake during the night.
"Their social life declined drastically as he had no desire to leave the house and socialize. She also testified that after the accident they had no marital relations, as he was always in pain.
"The trial court has great discretion to assess damages that cannot be calculated with certainty. LSA-C.C. art. 1999. The formulation of damages is enhanced by personal observation of the parties' demeanor. We will not adjust the award unless there is an obvious abuse of discretion. Finley v. Bass, supra.

"Thus, we find that the jury did not abuse its discretion in awarding $10,000.00 in damages for loss of consortium to Shirley Sexton."
It appears to us that the court's treatment of the consortium question in Sexton is somewhat typical. Much of what the courts concentrate on consist of inconveniences and anxieties suffered by the uninjured party, the necessity of performing extra duties such as nursing and the general decline in the quality of married life because of the limitations, physical and psychological, sustained by the injured party. Some such elements may be hard to fit into such definitions of loss of consortium such as have been attempted in Finley v. Bass, supra, and Lonthier v. Northwest Ins. Co., supra; and the cases do not seem to give any thought, as we suggested in Sharp, to distinguishing between loss of *465 consortium and mental anguish suffered by an uninjured party.
The courts find justification for loss of consortium awards in acceptable testimony concerning impaired sexual relations and personality changes in the injured spouse. Tracy v. Jefferson Parish, 523 So.2d 266 (La.App. 5th Cir.), writ denied, 530 So.2d 569, reconsideration denied, 532 So.2d 141 (La.1988); Thomas v. State Farm Ins. Co., 499 So.2d 562), writs denied, 501 So.2d 213 (La. 1987). In this regard Lognion v. Calcasieu Parish Police Jury, 503 So.2d 1092 (La.App. 3d Cir.), writs denied, 507 So.2d 227 (La. 1987), appears to be typical. In Lognion we found no abuse of discretion by the trial judge in awarding only $1000 for loss of consortium where the parties could not engage in sexual relations for four or five months after the accident and the relationship did not improve for nearly two years. Also, the incapacitated husband became "irritable and short-tempered." In Miller v. Atlantic Richfield Co., 499 So.2d 1095 (La.App. 3d Cir.), writ denied, 501 So.2d 198 (La.1986), we found the evidence supported a jury verdict awarding $3000 to a wife with little or no discussion of "elements of consortium." We noted only that the injured husband was hospitalized for six days after his accident and was disabled for months and continued "to be unable to perform all of his regular chores around the home and their farm." Miller, at p. 1101.
We have been at some pains to discover in the jurisprudence some guidelines for assessing loss of consortium claims because of the unusual circumstances of this case: the jury found there was a loss of consortium but valued the loss at only $400 and the factual matters backing up the claim are neither dramatic nor extraordinary. We confess that we find little real guidance. In general, courts approach loss of consortium claims in much the same manner as they approach considerations of general damages for pain and suffering, of the party actually suffering physical injury. The considerations are highly subjective. The appellate courts tend to rely heavily on the impressions of the trier of fact. Finley v. Bass, supra, Lognion v. Calcasieu Parish Police Jury, supra, and Sexton v. Louisiana Vacuum Services, Inc., supra. In such cases the courts stress the rule that trial courts have great discretion in assessing damages that cannot be calculated with certainty and the formulation of such damages is enhanced by the parties' demeanor.
Our lone conclusion is that loss of consortium is a general damage claim to be subjectively determined. Attempts to measure loss of consortium objectively result in shading special damage claims, which may or may not be compensable under other categories of damages, over into loss of consortium. Also, if the distinction pointed out in Sharp v. Metro. Property and Liability Ins., supra, is not observed, courts may award the uninjured party damages for mental anguish and distress because of injury to a third party which are not yet within the reach of Lejeune v. Rayne Branch Hosp., 556 So.2d 559, 561 (La. 1990).
In our discussion above we have concentrated primarily on what considerations are made in fixing the value of a loss of consortium claim. Before leaving the matter, we note that the appellate courts of this State have not looked with favor on high awards. The usual range appears to be between $5000 and $10,000. Some trial judges have ventured far beyond this scale, but generally high awards have been scaled down. Some of the reductions are as follows: American Motorists v. American Rent-All, 566 So.2d 121 (La.App. 5th Cir.1990), reduced an award of $55,000 to $10,000; Spangler v. North Star Drilling Co., 552 So.2d 673 (La.App. 2d Cir. 1989), reduced a $75,000 award to $25,000; Vaccaro v. Sports & Imports, Inc., 539 So.2d 989 (La. App. 4th Cir.), writ denied, 541 So.2d 1391, 1392 (La.1989), reduced an $85,000 award to $25,000; Thomas v. State Farm Ins. Co., 499 So.2d 562 (La.App. 2d Cir.1986), writs denied, 501 So.2d 213, 215 (La.1987), reduced an award of $300,000 to $20,000. See also Deville v. K-Mart Corp., 498 So.2d 1122 (La.App. 3d Cir.1986). The highest award approved on appeal which we have found was in Tracy v. Jefferson *466 Parish, supra, which was for $75,000. We mentioned awards of $50,000 and $25,000 in our recent case of Peter v. Allstate Ins. Co., 563 So.2d 1309 (La.App. 3d Cir.1990), in which we awarded $10,000. We approved a jury award of $25,000 in Mercer v. Fruehauf Corp., 492 So.2d 538 (La.App. 3d Cir.), writ denied, 496 So.2d 350 (La.1986).
Although our attempted in-depth study set forth above gives us little by which to judge the jury's $400 loss of consortium award in this case, we nevertheless consider that the claim is not quite so negligible. The jury abused its discretion. In our opinion the lowest amount which the jury could have awarded was $3500. Therefore, we will reinstate the jury award in favor of Helen Johnson but will amend the amount of the award accordingly.

CONCLUSION
For the foregoing reasons, the decision of the trial judge which granted the defendant's motion for judgment notwithstanding the verdict is reversed. The jury verdict on the issue of liability is reinstated. The jury verdict fixing the plaintiff-husband's damages at $25,600 is reinstated and judgment for that amount in his favor is reinstated. The judgment in favor of the plaintiff-wife, Helen Johnson, and against defendant, St. Patrick Hospital of Lake Charles, is reinstated but the amount of the award is amended to the sum of $3500, with legal interest from the date of judicial demand until paid.
All costs at trial and on appeal are assessed against the defendant-appellee.
REVERSED AND RENDERED.