649 So.2d 661 (1994)
Vincent BROUSSARD, Plaintiff-Appellee,
v.
Matthew C. MEAUX, et al., Defendant-Appellant.
No. 94-313.
Court of Appeal of Louisiana, Third Circuit.
November 2, 1994.
*663 Michael John Mestayer, Stephen Francis Mestayer, for Vincent Broussard.
Stephen Hawley Myers, for Matthew C. Meaux et al.
Stacy Skolfield Lee, for Allstate Ins.
Before DOUCET, PETERS, and BERTRAND[*], JJ.
PETERS, Judge.
Vincent and Octavia Broussard, husband and wife, sustained personal injuries in a two vehicle accident that occurred on March 1, 1991, in Iberia Parish, Louisiana. They instituted this action against Matthew Meaux, as driver of the automobile which struck their vehicle; Meaux's liability insurer, State Farm Mutual Automobile Insurance Company (State Farm); and their uninsured motorist insurance carrier, Allstate Insurance Company (Allstate), to recover for their losses. The suit was later amended to include Meaux's Auto Parts (sometimes referred to in the record as Meaux's Auto Parts and Industrial Supplies, Inc.) as a defendant.
In March of 1992 Vincent Broussard died of causes not related to the accident, and his surviving spouse and children (Mary B. Sigue, Elizabeth B. Armstead, Valerie B. Brooks, Vincent Broussard, Jr., Jerry Broussard, Eugene Broussard, and Theodore Broussard) were substituted as plaintiffs in his claim for damages. Prior to trial, the defendants stipulated that the accident was caused solely and exclusively by the negligence of Matthew Meaux and stipulated to the amount of past medical expenses. In exchange for this stipulation, the plaintiffs released Matthew Meaux and Meaux's Auto Parts from the litigation. At trial the jury awarded the plaintiffs $33,215.00 in damages for the pain and suffering, past medical expenses, loss of consortium, and economic loss of Vincent Broussard. Octavia Broussard was awarded a total of $94,050.00 in damages to compensate for her past and future pain and suffering, past and future medical expenses, and loss of consortium. State Farm has appealed this verdict.

FACTS
On March 1, 1991, Vincent and Octavia Broussard were traveling east on Louisiana Highway 674. At the same time Matthew Meaux was traveling west on Highway 674 and was approaching the Broussard vehicle. The accident occurred when the vehicle in front of Meaux slowed to make a right turn and Meaux failed to apply his brakes in time. His truck veered into the eastbound lane and collided with the Broussard's vehicle. As a result of the collision, both Mr. and Mrs. Broussard sustained injury.
The only issue before the jury was the extent and value of these injuries in terms of general and special damages. In answering *664 the interrogatories propounded to it, the jury made the following findings:

Damages sustained by Vincent Broussard
 Past medical expenses. $ 3,415.00
 Economic Loss. 2,300.00
 Pain and suffering, both physical and
 mental (past and present), disability
 and loss of enjoyment of life. 20,000.00
 Loss of consortium. 7,500.00
 __________
 TOTAL $33,215.00
Damages sustained by Octavia Broussard
 Past medical expenses. $ 4,350.00
 Future medical expenses. 4,700.00
 Pain and suffering, both physical and
 mental (past and present), disability
 and loss of enjoyment of life. 77,500.00
 Loss of consortium. 7,500.00
 __________
TOTAL $94,050.00

The defendants argue that the damages awarded to the Broussards were both excessive and unsupported by the record.

SCOPE OF REVIEW
In its review of damage awards, the appellate court should not determine what it considers to be the appropriate award, but should examine the record to review the exercise of discretion by the trial court. Reck v. Stevens, 373 So.2d 498 (La.1979). Only if the reviewing court determines there was an abuse of discretion by the trier of fact should it reevaluate the evidence and decide what it thinks is an appropriate award. Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1976). Citing Reck with approval, the Louisiana Supreme Court in Youn v. Maritime Overseas Corp., 623 So.2d 1257, 1260-1261 (La.1993), recently provided additional guidance as to the proper review of damages:
"In Reck v. Stevens, 373 So.2d 498 (La. 1979), this Court commented on appellate review of general damage awards and on the "much discretion" in fixing damages accorded to trial courts by La.Civ.Code art. 1934(3) (1870). The decision pointed out that the role of an appellate court in reviewing general damages is not to decide what it considers to be an appropriate award, but rather to review the exercise of discretion by the trier of fact. Each case is different, and the adequacy or inadequacy of the award should be determined by the facts or circumstances particular to the case under consideration.
"In Reck, this court disapproved the appellate court's simply reviewing the medical evidence and then concluding that the award for those injuries was excessive, without taking into consideration the particular effect of the particular injuries on the particular plaintiff. This court further disapproved of the use of a scale of prior awards in cases with generically similar medical injuries to determine whether the particular trier of fact abused its discretion in the awards to the particular plaintiff under the facts and circumstances peculiar to the particular case. The initial inquiry is whether the award for the particular injuries and their effects under the particular circumstances on the particular injured person is a clear abuse of the "much discretion" of the trier of fact. (citations omitted). Only after such a determination of an abuse of discretion is a resort to prior awards appropriate and then for the purpose of determining the highest or lowest point which is reasonably within that discretion. (citations omitted).
"The standard for appellate review of general damage awards is difficult to express and is necessarily non-specific, and the requirement of an articulated basis for disturbing such awards gives little guidance as to what articulation suffices to justify modification of a generous or stingy award. Nevertheless, the theme that emerges from Gaspard v. LeMaire, 245 La. 239, 158 So.2d 149 (1963) through Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1976), and through Reck to the present case is that the discretion vested in the trier of fact is "great," and even vast, so that an appellate court should rarely disturb an award of general damages. Reasonable persons frequently disagree about the measure of general damages in a particular case. It is only when the award is, in either direction, beyond that which a reasonable trier of fact could assess for the effects of the particular injury to the particular plaintiff under the particular circumstances that the appellate court should increase or reduce the award."
Thus, the threshold inquiry is whether the verdict in this case is a clear abuse of the *665 "great" discretion of the trier of fact. With this precept in mind, we turn to the evaluation of the plaintiffs' damages in this case.

GENERAL DAMAGES
Vincent Broussard was seventy-two years old at the time of the accident. His primary injuries were lacerations, abrasions, and bruises to his knees. He first sought medical attention eleven days after the accident, when he saw Dr. Kenneth Ritter, a New Iberia internist. When asked to describe Mr. Broussard's left leg, the doctor stated that it was
"Pretty nasty. It was a big blue leg. It was dark blue, very tender, much larger than the other side. They had a large laceration on the front of it, a big cut, you know, slash. The leg was, you know, it was beat up. I guess if he wasn't on the Coumadin for all the other problems it was, just been a really bad beat up leg like you got hit with a baseball bat. But because of the Coumadin he put a tremendous amount of blood, he probably poured two full units, two pints, if you will, of blood outside the vessels in that leg so it made it very tight, swollen and tender and made it real dark looking. It looked very nasty."
On March 17, Mr. Broussard was hospitalized because of the deteriorating condition of his legs. Dr. Ritter was concerned that the growing infection and heavy blood accumulation in the legs, if not controlled, would result in the loss of a foot or even the loss of Mr. Broussard's life. The healing process was extended because Mr. Broussard suffered from a preexisting and severe venous insufficiency which caused poor circulation of blood through the body. As a result of this condition, the body's white blood cells were not able to reach the infection promptly to prevent its spreading. He also suffered from a blood clotting problem and was taking a blood thinner medication, Coumadin, for this condition. This blood thinner also hampered the healing process as it prevented the blood from properly clotting. It was Dr. Ritter's opinion that the severe bruising and accumulation of blood would take at least six months to dissolve and for the tenderness to disappear.
After release from the hospital, Mr. Broussard was able to walk only with the use of a walker or crutches. The continued severe swelling in his legs required him to keep them elevated and wrapped in warm compresses a significant portion of each day. His condition improved over the next several months, but when Dr. Ritter saw him again on July 30, 1991, although he had become extremely ill from health problems unrelated to the accident, he was still suffering extreme pain in his knees. Mr. Broussard made several subsequent visits to the local emergency room prompted by periods of severe pain in his knees. In January of 1992, Mr. Broussard was diagnosed with prostate cancer and subsequently died in March of the same year.
According to his wife and children, Mr. Broussard was a very active man prior to the accident. Mr. Broussard spent part of almost everyday tending to his horses and his one and one-half acre garden. He enjoyed gathering the fruits and vegetables each season and distributing them to his friends and family. He also helped his son Vincent Broussard, Jr., care for his horses. Mr. Broussard enjoyed family camping trips on many weekends, senior citizen parties, and mass at his church. After the accident, his pain and lack of mobility precluded all of these activities and he was essentially confined to his home until his death. In fact, according to Octavia Broussard, her husband's priest would come to their home to give communion.
The defendant argues that Mr. Broussard's pain and suffering caused from this accident was limited to his initial lacerations and bruises, and a hematoma, all of which should have resolved themselves within six months of the accident. The defendant points out that Mr. Broussard had previous problems with the circulatory and blood clotting conditions, with gout, and with heart disease. Dr. Ritter acknowledged that Mr. Broussard's poor health contributed to the severity of his injuries. It was his opinion that a normally healthy person would have recovered from similar injuries within six months, but Mr. Broussard's preexisting conditions caused his healing process to be extended. *666 However, he could not say that more probably than not the knee complaints were related to the accident. Although he did not rule out the accident as to causation, he felt the gout or arthritis was the more likely cause. The defendants further point out that by July 30, 1991, Mr. Broussard was suffering from numerous ailments, any one of which could have prevented him from engaging in his routine activities. They argue that the accident was not the sole cause of his incapacity.
Despite Dr. Ritter's reluctance to connect the later knee difficulties to the accident, his testimony is clear that Mr. Broussard did sustain injuries to his legs in the accident which required hospitalization on March 17. Further, Dr. Ritter testified that the type of injury he received could damage the veins or arteries and could have an adverse effect on circulation.
"Q: Considering the condition of his legs that you saw when you first saw him and the history of having been involved in this accident, is that the type of injury that can damage the veins or the arteries, deep bruising?
"A: Sure, correct.
"Q: And, that bruising of the veins or the arteries will have an adverse impact on circulation?
"A: It certainly can.... If you get a bruise, if you get hit with something, if you bump into something, you get a big blue mark. That's blood that has come out of the vessels and now is under the skin. It's unrelated to the vessels at that time. It's under the skin. It can't circulate, it just sits there until your white blood cells eat it up which creates inflammation which creates soreness. He had enough of a crush injury of the muscle area and with the laceration to boot and being on the blood thinner and having poor venous return anyway before that even started that he lost an awful lot of blood in that leg ..."
(emphasis supplied).
The plaintiffs carry the burden of proving causation by a preponderance of the evidence. However, the plaintiffs also have the benefit of a presumption. In Housley v. Cerise, 579 So.2d 973, 980 (La.1991), the Louisiana Supreme Court cited Lucas v. Insurance Company of North America, 342 So.2d 591, 596 (La.1977), and stated:
"... [a] claimant's disability is presumed to have resulted from an accident, if before the accident the injured person was in good health, but commencing with the accident the symptoms of the disabling condition appear and continuously manifest themselves afterwards, providing that the medical evidence shows there to be a reasonable possibility of causal connection between the accident and the disabling condition."
See also Dabog v. Deris, 625 So.2d 492 (La. 1993).
In addition, it is well settled law that damages are not mitigated by the fact that the plaintiff suffered from some preexisting illness which may have aggravated the injuries resulting from the accident. Lasha v. Olin Corp., 625 So.2d 1002, 1006 (La.1993).
"It is clear that a defendant takes his victim as he finds him and is responsible for all natural and probable consequences of his tortious conduct. (citations omitted)... The defendant is liable for the harm it causes even though under the same circumstances a normal person would not have suffered that illness or injury. When the defendant's tortious conduct aggravates a pre-existing condition, the defendant must compensate the victim for the full extent of the aggravation."
Vincent Broussard, Jr. testified that prior to the accident his father's other health problems never prevented him from performing his daily activities of gardening and tending to the horses: "He had some problem, you know ... my dad went full steam ahead."
The jury was able to consider the specific injuries suffered by Mr. Broussard, the medical treatment he received, his fear associated with the possible loss of leg or life because of infection, his fear of the worsening condition of his health, and his mental anguish because of his loss of mobility and inability to do that which he had previously enjoyed. They evaluated the credibility of the witnesses and made a decision. Applying the mandate of Youn, supra this court cannot say the jury *667 abused its vast discretion and declines to disturb the award of general damages to Mr. Broussard.
The jury also awarded Octavia Broussard $77,500.00 in general damages and the defendant contends this award is also excessive. On the date of the accident, Mrs. Broussard was seventy-three years old. The impact of the accident caused her to strike the dashboard and windshield. As a result, she sustained a blow to the head and jaw and suffered cuts and bruises to her head and face. She was bleeding profusely from the mouth and immediate medical care included four or five stitches in her chin. Her face became so swollen and discolored that her own son did not recognize her.
On April 24, 1991, Mrs. Broussard saw Dr. John Cobb, an orthopedic surgeon, complaining of neck and jaw pain. He referred her to Thomas Landry, a physical therapist who treated her from April 29, 1991, until June 17, 1991, and again from February 6, 1992, until April 2, 1992. During this time she complained of body soreness and TMJ discomfort. Landry ceased to treat her, not because she was completely recovered, but because she had reached a maximum plateau.
Her complaints associated with her jaw began to be treated by Dr. Joseph Sourci, a dentist on May 2, 1991. Mrs. Broussard was having difficulty opening her mouth which created problems in eating. Dr. Sourci diagnosed Mrs. Broussard as having temporomandibular joint (TMJ) problems and began treating her with splint therapy. In addition to wearing the splint, Mrs. Broussard was limited to only soft foods in an effort to relieve some of the stress on her jaw. Mrs. Broussard had prior problems with her dentures and an overbite which, according to Dr. Sourci, could cause some TMJ problems, but he attributed her current condition to the accident because of lack of prior complaints.
"Q: Now, based upon the history she gave you of the accident and the test, appointments, examinations you had of her, do you have an opinion with reasonable dental certainty as to the cause of her TMJ problems?
"A: Well, certainly the accident would definitely aggravate whatever problems she's come, has had since then, without a doubt. Because, I mean, she gave me a history of no problems prior to that."
(emphasis supplied).
At the time of trial, however, Dr. Sourci testified that the range of opening on her jaw had reached normal.
Mrs. Broussard testified that after the accident, she could no longer take her regular walks without having someone accompany her because she was afraid of becoming dizzy. She also stated that she could no longer cook or can vegetables and fruits from the garden because her neck was always sore. The splint which she has to wear on a regular basis was described by her as being very uncomfortable and will require adjustment and replacement on a regular basis for the rest of her life. At the time of trial she was seventy-four years old and had a life expectancy of approximately ten years. The jury awarded Mrs. Broussard $77,500.00 in damages for her pain and suffering. The defendant argues that this is excessive, particularly because of the small amount of medical expense associated with the accident. This is exactly the approach rejected in Youn, supra. Rather than use a "scale of prior awards" or cases with "generically similar medical injuries" each case must be considered for its particular injuries and the effect of those injuries on the individual plaintiff. Id. at 1260. The court should consider all elements, including the duration and the intensity of the pain. Buckbee v. AWECO, Inc., 626 So.2d 1191 (La.App. 3rd Cir. 1993), writ denied, 93-2691 (La. 1/13/94); 631 So.2d 1162. In this case, the record reveals that Mrs. Broussard had no problems with her jaw prior to the accident but has been suffering since the date of the accident. She also has to wear a splint between her teeth on a regular basis which she has described as very uncomfortable. She has not been able to enjoy her regular activities of cooking, canning, and walking without having some sort of muscular pain in her neck. Dr. Sourci testified that at the time of trial, Mrs. Broussard was still suffering from TMJ pain and would probably continue to suffer some discomfort into the future.
*668 At the time of trial, Mrs. Broussard was seventy-four years old. Based on a ten year life expectancy, the jury awarded Mrs. Broussard $77,500.00 in damages to compensate her for past and future pain and suffering. We do not find that the jury abused its discretion in awarding this amount.

FUTURE MEDICAL EXPENSES
The amount of past medical expenses was the subject of a stipulation and therefore is not in dispute. However, the defendant contends the jury's award of $4,700.00 to Mrs. Broussard for future medical expenses is excessive.
Awards for future medical expenses need not be proven to an exact value. The trier of fact should determine from the medical records and all the evidence presented a minimum amount that reasonable minds would agree will be required in the future. Stiles v. K-Mart Corp., 597 So.2d 1012 (La. 1992). However, the plaintiff must bear the burden of proof as it cannot be speculative.
"Future medical expenses must be established with some degree of certainty. The plaintiff must show that, more probably than not, these expenses will be incurred. Awards will not be made in the absence of medical testimony that they are indicated and setting out their probable cost. An award for future medical expenses cannot be based on mere speculation of the jury. Much stronger proof, such as medical testimony of the specific expenses to arise, should be required for such an award." Futrell v. Scott Truck and Tractor Co., 629 So.2d 449, 458 (La.App. 3rd Cir.1993), writ denied, 94-0327 (La. 3/25/94); 635 So.2d 232.
Dr. Sourci testified that Mrs. Broussard would have recurring problems and recommended that she return to him for follow-up examinations every six months. Additionally, it was his opinion that Mrs. Broussard would require the replacement of her splints and the realignment or replacement of her dentures. He anticipated these procedures would be required every three to five years. The cost of each examination was estimated to be $30.00 to $40.00 per visit. The replacement cost of the splint was estimated to be $300.00 and that of the dentures was $500.00. Applying these estimates for services to be rendered in the future over the life expectancy of Mrs. Broussard, we cannot find that the jury was clearly wrong in its award.

ECONOMIC LOSS
The jury awarded $2300.00 to compensate for Vincent Broussard's economic losses suffered as a result of the accident. The defendant contends that the award is both speculative and excessive.
Mr. Broussard was retired at the time of the accident, but did maintain a large vegetable garden which he personally tended. The excess produce from the garden was sold at a Farmer's Market for profit. The only testimony concerning the amount of annual profit is that of Octavia Broussard who testified that the return was approximately $900.00 per year. The plaintiffs contends, that as a result of his injuries, Mr. Broussard lost the 1991 and 1992 growing seasons thereby suffering an economic loss of $1800.00. Additionally, the plaintiffs established a $545.00 storage expense for the damaged vehicle as a result of the accident. The plaintiffs claim a total economic loss of $2,345.00. The jury awarded $2,300.00.
Damages should not be rejected simply because they are incapable of mathematical precision. Cornett v. State Through W.O. Moss Regional Hospital, 614 So.2d 189 (La.App. 3rd Cir.), writ denied, 617 So.2d 907 (La.1993) and Guillory v. Terra International, Inc., 613 So.2d 1084 (La.App. 3rd Cir.), writ denied, 619 So.2d 1063 (La.1993). Additionally, a farmer may recover for loss of profits from a crop that he is unable to harvest due to personal injuries received through the negligence of another. Camus v. Bienvenue, 91 So.2d 99 (La.App. 1st Cir. 1956).
The plaintiffs have proven by a preponderance of the evidence the storage expense and the loss of one season of profit from the crops. However, Vincent Broussard was diagnosed with cancer in January of 1992 which at that time, was obviously in the advanced stages as he died within two *669 months. The court cannot conclude that the loss of the growing season in 1992 is attributable to the negligence of Matthew Meaux. Therefore, the award for economic loss is reduced to $1,475.00.

LOSS OF CONSORTIUM
The jury awarded both Mr. and Mrs. Broussard $7500.00 for loss of consortium. The defendants argue that this award is unsupported by the record. However, in reviewing awards for loss of consortium, appellate courts give much deference to the trial court's determination.
"In general, courts approach loss of consortium claims in much the same manner as they approach considerations of general damages for pain and suffering, of the party actually suffering physical injury. The considerations are highly subjective. The appellate courts tend to rely heavily on the impressions of the trier of fact (citations omitted).... In such cases the courts stress the rule that trial courts have great discretion in assessing damages that cannot be calculated with certainty and the formulation of such damages is enhanced by the parties' demeanor."

Johnson v. Aetna Casualty & Surety Co., 575 So.2d 458, 465 (La.App. 3rd Cir.) writ denied, 578 So.2d 934 (La.1991).
In reviewing the award for loss of consortium, it is necessary to evaluate the elements which comprise a loss of consortium claim. These elements include loss of society, sex, service and support. Lonthier v. Northwest Ins. Co., 497 So.2d 774 (La.App. 3rd Cir.1986).
"`Society' is broader than loss of sexual relations. It includes general love, companionship, and affection that the spouse loses as a result of the injury. `Support' is the lost family income that would go to support the uninjured spouse. `Service' is the uncompensated work around the house or educational help with the children which presumably will, as a result of the injury, have to be obtained from another source and at a price." Id. at 776.
Mr. and Mrs. Broussard were seventy-two and seventy-three years old respectively at the time of the accident. Because of their injuries they were no longer capable of sustaining the level of companionship they had previously shared. Mrs. Broussard testified that as a result of the accident she and her husband could no longer attend the senior citizen parties they had enjoyed in the past nor could they regularly attend mass as they had done prior to the accident. The loss of support sustained by the couple related to the loss of the garden produce that had previously sustained the couple, their family, and their friends. The fact they were retired and living on social security at the time of the accident did not make the loss of the relationship previously existing any less valuable.
Prior to his injuries Mr. Broussard had performed the "service" of tending to the lawn, garden, and livestock. The loss of this service constituted a loss to Mrs. Broussard. She also provided her husband with many services which were difficult to impossible to perform after the accident. She previously tended to the housework, cooked, and canned the vegetables from her garden. Although she continued to can vegetables after the accident, that which had previously been enjoyable was no longer so because of the pain in her neck.
There is no testimony in the record that suggests the couple suffered any loss of love or affection after the accident although it is obvious the injuries sustained by each would affect the day-to-day relationship between the couple.
Appellate courts generally have not favored large awards for loss of consortium. Johnson, supra. On the average, awards range from $5000.00 to $10,000.00. In this case, the Broussard's were awarded $7500.00 each. The record reflects that the couple clearly suffered a true loss despite their advanced age and the fact that Mr. Broussard died approximately one year later from unrelated causes. Just as with every other award by the trier of fact, it should not be overturned on appeal absent the showing of manifest error. Lonthier, supra at 776, citing Arceneaux v. Domingue, 365 So.2d 1330 (La. 1978). This court cannot say that the jury *670 abused its discretion or committed manifest error in determining its award.

CONCLUSION
For the foregoing reasons the judgment of the trial court herein is amended to reduce the award of economic loss to the sum of $1,475.00 and, as amended, is affirmed. All costs of this appeal are assessed against defendantappellee, State Farm Automobile Insurance Company.
AMENDED AND AFFIRMED.
NOTES
[*] Honorable Lucien Bertrand, Jr., participated in this decision by appointment of the Louisiana Supreme Court as Judge Pro Tempore.