534 So.2d 1300 (1988)
Robert T. SLAY
v.
QUARLES DRILLING COMPANY, et al.
No. CA-8235.
Court of Appeal of Louisiana, Fourth Circuit.
November 10, 1988.
Writ Denied January 20, 1989.
*1301 Dué, Smith & Caballero, Walter Landry Smith, Baton Rouge, Simpson & Schwartz, Joseph H. Simpson, Amite, for plaintiff.
Alan A. Zaunbrecher, Metairie, for defendants.
Funderburk & Andrews, David K. Johnson, Baton Rouge, for intervenor.
Before BARRY, KLEES and PLOTKIN, JJ.
BARRY, Judge.
On June 17, 1982 the plaintiff, Robert T. Slay, began his first day of work at a land drilling site which was operated by his employer, Quarles Drilling Corporation. The site was very sloppy due to a recent rainfall, the presence of earth mud, drilling chemicals and jel. A derrickhand asked Slay to go to the mud room and check on the centrifugal pump which was leaking and contributing to the ground mess. On the way to the mud room Slay slipped and was injured.
Slay brought this Jones Act suit against Quarles and its insurer, Aetna Casualty and Surety Co., Davis Oil Co. (operator of the well), Quintana Petroleum Corp. (owner or operator of the well), Western Company of North America (drilling cement contractor), Major Mud & Chemical Co. (drilling mud contractor) and their insurers. Aetna Casualty & Surety Co. (Quarles' workmen's compensation insurer) intervened to recover paid compensation. Davis, Western and Major made various third party demands. Summary judgment on all claims was granted in favor of Quintana.
Prior to voir dire a settlement was reached with Davis, Western and Major Mud which dismissed all third party claims. The remaining defendants are Quarles and Aetna.
The jury found Slay was a Jones Act seaman and awarded him $60,000. Quarles was found 90% at fault and Slay 10% comparatively negligent. Judgment was entered against Quarles and Aetna for $5,000 and against Quarles for an additional $49,000. Aetna was reimbursed $12,805 by priority from Slay's judgment. The judgment specifies that the $12,805 represents $1,459 for medical expenses and $11,346 in compensation benefits to Slay.
*1302 Slay's first specification argues that the trial court failed to instruct the jury on the correct burden of proof as to his contributory negligence.
The burden of proving a plaintiff's contributory negligence rests on the defendant. Tucker v. Lirette, 400 So.2d 647 (La. 1981). Hamilton v. Employers Cas. Co., 506 So.2d 655 (La.App. 4th Cir. 1987). When a jury has been improperly instructed no weight should be accorded to the judgment and the appellate court must conduct a de novo consideration on appeal. Rodriguez v. Traylor, 481 So.2d 1017 (La. 1986); Thomas v. Missouri Pacific Railroad Co., 466 So.2d 1280 (La.1985).
The questioned jury instructions are as follows:
Under the Jones Act ... the burden of proof is on the Plaintiff to show negligence on the part of Quarles Drilling Corporation. Robert T. Slay must show that Quarles Drilling Corporation was negligent in producing the cause of his accident. Although only slight negligence is required the burden is still on the Plaintiff to prove the Defendant's negligence.
The same standards of proof and causation apply when determining whether Mr. Slay was contributorily negligent.
If you conclude that the Defendant was negligent, you, the jury, must also give consideration to the acts of the Plaintiff at the time of the accident. Was the plaintiff negligent in attempting to perform his duties if he knew that the condition of the deck of the rig might pose a danger to him? Under the Jones' Act Mr. Slay's duty to protect himself is slight, yet that duty exists. Therefore, the contributory negligence of Mr. Slay is available to mitigate any damages which Quarles may be found to owe, if it is shown that Mr. Slay was negligent in breaching his duty to protect himself.
Slay timely objected to the charge and urged that the charge should explicitly state that the defendants had to prove contributory negligence by a preponderance of the evidence. Prior to the above charge the judge instructed the jury "that one who asserts a fact must carry the burden of proving it by a preponderance of the evidence."
While the trial court's charge is not explicit as to contributory negligence, the general instruction is broad enough to set the burden of proof for each of the parties. We are satisfied that the instructions were proper.
Slay also urges the trial court erred by not granting his motions for a directed verdict and a judgment notwithstanding the verdict. He claims there is no evidence that he was negligent.
A seaman's duty to protect himself is slight, encompassing only that he do the work assigned and not to find the safest method. Spinks v. Chevron Oil Co., 507 F.2d 216, 223 (5th Cir.1975). A seaman is not contributorily negligent merely because he proceeds in an unsafe area. Rather, it must be shown that he knew or should have known that a safe alternative was available or that he had a duty to rectify an unsafe condition. Ceja v. Mike Hooks, Inc., 690 F.2d 1191, 1195 (5th Cir. 1982).
Slay was aware of the sloppy ground because he slipped a couple of times without falling, despite wearing boots. He testified that the ground condition was the worst he had ever seen, even though all land rig sites have some mud and that a roustabout's job is to clean up around the site. He stated that he could not avoid the area and do his job. He testified he looked where he was going and was not distracted at the time of his accident.
Al Carithers, driller at the site, testified about the conditions that morning. He said the boards were muddy and slippery and it was a difficult place to work. The centrifugal pump was leaking, presumably because the packing was gone and he felt it would have been safer by hosing water on the area.
*1303 Edward Robert, Jr., an expert in oilfield operational safety, also felt the area would have been safer if the boards had been cleaned. Other safety measures that would have made the area safe were to cover the ground with boards or build a walkway with pallets. He felt the muddy ground was Quarles' fault and responsibility. Robert conceded that every worker must be careful, but explained that would not mean avoid doing the job.
There was no evidence that Slay could have prevented the accident, or that he could have taken any measure to correct the situation, or that he was responsible for cleaning the area. Because there is no showing of a safe alternative or that Slay had a duty to rectify the ground's condition, the trial court erred by denying his motions for a directed verdict and a judgment notwithstanding the verdict on the issue of contributory negligence. Thus, judgment should have been entered in favor of Slay for the full amount of the jury award.
Judgment was entered against Aetna and Quarles for $5,000 and against Quarles alone for $49,000 for a total of $54,000. This reflected the $60,000 jury award less the ten (10%) percent Slay was found to be contributorily negligent. In order to enter judgment in favor of Slay for the full amount of the jury award, the judgment against Quarles for $49,000 must be amended to $55,000.
Slay also claims it was error to reimburse Aetna for its compensation payments. He argues that all of the payments must be considered maintenance because he was a "seaman".
The judgment for Aetna's reimbursement reflects the stipulation by the parties which states that "[c]haracterization of payments as either workers compensation or maintenance and cure or loans and the entitlement vel non of Aetna Casualty and Surety as workers compensation carrier to recover these amounts are reserved as issue of law." Slay and Aetna agree that the stipulation was orally made at the beginning of trial but never put into the record.
Slay's status as a seaman means all compensation payments are maintenance. Aetna's payments were pursuant to the compensation law, the stipulation to the contrary notwithstanding. Ceja v. Mike Hooks, Inc., 690 F.2d 1191 (5th Cir.1982) is inapplicable since it deals with whether an award for lost wages may be offset by the amount of maintenance paid. Slay was a seaman and is not entitled to compensation benefits. Thus, the judgment in favor of Aetna for reimbursement of compensation benefits is correct.
Therefore, there is no merit in Slay's contention that the trial court erred by refusing to supplement the record with: evidence of who made maintenance payments for what periods of time, Aetna's reimbursement to Quarles for amounts paid, and for compensation benefits paid by Quarles. The amount paid by Aetna was stipulated and Slay did not claim maintenance.
Slay correctly points out that the trial court erred by refusing to read to the jury the stipulated $1,459 medical expenses paid by Aetna, and the judgment does not include that sum. The judgment in favor of Slay should have included $1,459 for past medical expenses.
Slay also asks that the right to assert any claims under Moody v. Arabie, 498 So.2d 1081 (La.1986) be reserved and the request is granted.
That portion of the judgment in favor of Slay and against Quarles for the sum of FORTY-NINE THOUSAND AND NO/100 ($49,000.00) DOLLARS is amended to read as follows:
IT IS ORDERED, ADJUDGED AND DECREED that there be judgment in favor of plaintiff, Robert T. Slay, and against defendant, Quarles Drilling Corporation, in the principal sum of FIFTY-FIVE THOUSAND AND NO/100 ($55,000.00) DOLLARS and for ONE THOUSAND *1304 FOUR HUNDRED FIFTY-NINE AND NO/100 ($1,459.00) DOLLARS for past medical expenses.
All other portions of the judgment are affirmed.
The judgment is amended and affirmed as amended.
AMENDED; AFFIRMED.
PLOTKIN, J., concurs in part and dissents in part, with written reasons.
PLOTKIN, Judge, concurring in part and dissenting in part, with written reasons.
I respectfully concur in part and dissent in part. I would hold that the trial court's jury charge on contributory negligence was improper and, as the majority does, award the plaintiff the entire amount of the jury award. However, I would reverse the trial court's granting of the defendant insurer's claim for intervention.
Contributory Negligence
The majority concludes that the trial judge's jury charge on contributory negligence was proper, despite the fact the charge was "not explicit as to contributory negligence," because "the general instruction [was] broad enough to set the burden of proof for each of the parties." During the general instructions segment of the charge, the trial judge told the jury that "one who asserts a fact must carry the burden of proving it by a preponderance of the evidence." During the segment of the charges concerning the burden of proof, the judge simply told the jury that the plaintiff had the burden of proof to show that the defendant's negligence caused the plaintiff's actions. He then stated that "[t]he same standards of proof and causation apply when determining whether Mr. Slay was contributorily negligent." That statement is followed by a series of questions concerning the plaintiff's possible negligent acts. Nothing is said concerning the fact the defendant had the burden of showing the plaintiff's negligence by a preponderance of the evidence. The record indicates that the court denied the plaintiff's request for the following jury instruction: "The defendant, and not the plaintiff, bears the burden of proving by a preponderance of the evidence that the plaintiff was contributorily negligent in causing his own injury."
I disagree with the majority's conclusion that the instructions, taken as a whole, were proper, and would find that the trial court erred in refusing the plaintiff's requested instruction. The charges given were patently misleading, confusing and inadequate. The Louisiana Supreme Court has consistently held that contributory negligence cannot be presumed, but must be proven by the defendant by a preponderance of the evidence. Esco v. Smith, 468 So.2d 1169, 1174 (La.1985), writ denied 479 So.2d 925 (La.1985). The court's statement in the general instruction that one who asserts a fact has the burden of proving that fact could not possibly have informed the jury of the burden of proof in contributory negligence.
However, I disagree with the majority's conclusion that the trial court should have granted the plaintiff's motion for summary judgment and motion for judgment notwithstanding the verdict (JNOV). First of all, the two motions are different and different standards are used to analyze the record to determine whether either or both motions should be granted. Second, the majority summarily concludes that the motions should have been granted, but neglects to either explain the standards for granting those motions or analyze the record to show why the motions should have been granted.
It is unnecessary for us to decide whether one or both motions should be granted in the instant case. When a verdict is the result of an improper jury charge, no weight is to be afforded that verdict because it is not entitled to a presumption of regularity, and the appellate court should conduct a trial de novo. Thomas v. Missouri Pacific R.R. Co., 466 So.2d 1280, *1305 1284 (La.1985). Therefore, this court should consider the record in the case and render a judgment in accordance to its findings.
In this case, as the judge noted out of the presence of the jury, the record contains no evidence of contributory negligence. Therefore, I concur with the majority's holding that the plaintiff is entitled to the entire $60,000 jury award, but for different reasons. I agree with the majority's amending of the judgment to hold Quarles liable for $55,000, rather than the $49,000 awarded by the trial judge. The remaining $5,000 of the $60,000 award is the responsibility of Aetna Casualty and Surety Co., Quarles' insurer.
Intervention
I would reverse the trial court's $12,805 judgment in favor of Aetna as reimbursement for compensation benefits paid to Slay for a number of reasons.
First, Aetna's "intervention" in the instant case was itself improper. La.C.C.P. art. 1091 allows a "third party" to intervene in an action in which he is not a party to protect his rights. In this case, Aetna was a named defendant. Aetna's attempt to "intervene" against Slay was actually a request for a "set-off" against amounts paid to the employee.
Second, and more importantly, since the jury found that the plaintiff was a seaman, Aetna is not entitled to recover any of the payments made to Slay, either by intervention or by set-off. As the majority notes, prior to trial, the parties entered a written stipulation, reserving as an issue of law characterization of the payments made by Aetna as either workers' compensation, maintenance and cure or loans. That stipulation is critical and Aetna must be bound by that stipulation. Once the jury decided that Slay was a seaman, the issues of law were decided. As a seaman, Slay was not entitled to workers' compensation payments. See, Thibodaux v. Atlantic Richfield, 580 F.2d 841 (5th Cir.1978), cert. denied 442 U.S. 909, 99 S.Ct. 2820, 61 L.Ed.2d 274 (1979). Maintenance payments may not be off-set by the employer. Ceja v. Mike Hooks, Inc., 690 F.2d 1191 (5th Cir. 1982); Morel v. Sabine Towing & Transportation Co., Inc., 669 F.2d 345 (5th Cir. 1982). Aetna's unilateral attempt to avoid this result by classifying the payments made to plaintiff after the first eight months as "workers' compensation" does not change that result.
Third, since the plaintiff had no input into how the payments were classified, his acceptance of the checks marked "workers' compensation" by Aetna does not affect the true nature of the payments. See Kibadeaux v. Standard Dredging Co., 81 F.2d 670 (5th Cir.1936); Harney v. William M. Moore Building Corp., 359 F.2d 649 (2d Cir.1966). Initially and for the first eight months following the accident, Aetna designated the payments made to the plaintiff as "maintenance and cure." The designations were changed only after the amount of the payments increased. However, the jury's finding that the plaintiff was a seaman at the time of the accident, coupled with the stipulation between the parties, makes all payments made to the plaintiff "maintenance and cure," Aetna's designations notwithstanding.
Finally, the fact that the payments designated as "workers' compensation" were greater than the amounts previously paid by Aetna does not, as a matter of law, prove that the payments were worker's compensation. During the first nine months, the payments were $70 per week. After March 1983, they were increased to $183 per week. Defendants claim that the increased amount of the payments was too great for them to be considered maintenance and cure. However, it has been held that $40 per day is not an unreasonable amount for maintenance and cure. Harper v. Zapata Off-Shore Co., 741 F.2d 87, 91 (5th Cir.1984). Therefore, the defendants' argument has no merit.
Conclusion
I would concur in the majority's holding which reverses the jury's ten percent contributory *1306 negligence finding and award the plaintiff the entire $60,000 jury verdict. I would reverse the trial court's granting of the $12,805 intervention in favor of Aetna. I agree in the majority's holding regarding medical expenses.