637 So.2d 1108 (1994)
Townsend E. CARMEN
v.
Michael V. GONZALEZ, et al.
No. 93-CA-2418.
Court of Appeal of Louisiana, Fourth Circuit.
May 17, 1994.
*1109 Charles J. Imbornone, New Orleans, for appellee.
Gerald J. Talbot, Greg A. Pellegrini, Lemle & Kelleher, New Orleans, for appellants.
Before SCHOTT, C.J., and BYRNES and CIACCIO, JJ.
BYRNES, Judge.
On October 23, 1989, plaintiff/appellee, Townsend E. Carmen, was driving a vehicle which was involved in a collision with another vehicle being driven by Michael Gonzales. Mr. Carmen filed suit against Mr. Gonzales; Susan L. Tabor the owner of the vehicle Mr. Gonzalez was driving; Diesel Tractor and Equipment, Inc., Mr. Gonzalez's employer; and United States Fidelity and Guaranty Co., (U.F.G. & G.) as the insurer for Michael Gonzalez, the truck and Diesel Tractor and Equipment.
*1110 The jury awarded the plaintiff $200,000 which included stipulated property damage of $2,762.96 and medical expenses up to the date of trial of $4,039.00. All defendants with the exception of Susan L. Tabor were found to be solidarily liable. Susan L. Tabor was dismissed from the suit with prejudice.
The collision occurred when Mr. Carmen was emerging from a warehouse where his employer, Delta Queen Steamboat Company maintained offices. The area onto which the warehouse exit emerges is called the "apron."
I. Mr. Carmen's Testimony Regarding Dr. Billings' Diagnosis Was Inadmissible Hearsay, But Its Admission Was Not Sufficiently Prejudicial To Warrant Reversal.
The trial judge, over defendant's objection allowed the plaintiff to testify concerning what Dr. Billings told him about his diagnosis that conflicted with Dr. Billings' testimony. The defendant argues that this was reversible error because it was inadmissible hearsay which confused the jury. The trial judge stated:
"If [Dr. Billings] told him, [Mr. Carmen] canDr. Billings will be here. But if he told him its admissible. And Dr. Billings will either corroborate or not."
Defendant contends that Mr. Carmen testified that the MRI showed problems with three discs in the neck, contrary to Dr. Billings' testimony that it was only two. Mr. Carmen also testified that Dr. Billing's told him that surgery was necessary, which the defendant contends was contrary to Dr. Billings' testimony.
When asked by his attorney about the MRI, Mr. Carmen testified that:
"To my understanding again, and these are layman's terms, but I hadit showed problems with three discs in the neck and some bone spurs and restrictions or possible compression of the nerves coming out of the spine." (Emphasis added)
The defendant asserts that this is in conflict with the following testimony by Dr. Billings:
Q. So using your terms, would it be fair to say that in your opinion Mr. Carmen has a herniation at two or three levels? (Emphasis added)
A. I think so. Two. (Emphasis added)
Dr. Billings testified that the MRI showed herniation at only two levels, but he testified that the MRI showed a congenital problem at another level, not to mention bone spurs at still another level. Mr. Carmen did not testify that Dr. Billings had told him he had herniation at three levels. He testified that it was his understanding that the MRI showed "problems" with three discs. "Problems" would include the congenital defect and well as the herniations caused by the accident. If the bone spurs are also taken into account, Mr. Carmen arguably would have been correct in stating that the MRI showed "problems" at more than three levels.
Mr. Carmen's hearsay testimony of what Dr. Billings told him regarding the likelihood of future surgery was:
Q. Now, what has been Dr. Billings' recommendation to you?
A. Well, again, I'm going to tell you what my understanding of his recommendation is. This is something that's not going to improve with time. That it may get worse with time. That's why we have the imaging and the electric test to measure from. And he indicates that sometime surgery is going to be recommended. And what he has left me with basically, he is saying, you know, the surgery is not going to improve anything tremendously. But if the pain is an ongoing problem, and one that gets worse to the point where I say, let's at least reduce it, then, the surgery would be appropriate. (Emphasis added)
Contrary to the defendant's assertion, Mr. Carmen's testimony is remarkably consistent with Dr. Billings' testimony which was as follows:
Q. Is Mr. Carmen a candidate for surgery at this time?
A. I think he is.
Q. When you
A. I think he probably is.
Q. When you say probably is, for the members of the jury there is a term of art *1111 in the legal field, more probably than not a candidate for surgery?
A. If Mr. Carmen came into the office next week and says, look, I can't stand the pain, I'm getting weak in my arms, and it's not acceptable. And I would agree that, yes, once the risks have been explained, then, surgery could be performed for him. (Emphasis added)
Both Mr. Carmen and Dr. Billings testified that surgery was indicated if the pain got worse. There are no inconsistencies in the testimony to confuse the jury. The admission of the hearsay testimony was harmless error.
II. The Trial Court Failed To Properly Instruct The Jury Concerning Plaintiff's Duty of Care.
The trial judge refused over defendant's timely objection to instruct the jury regarding the special standard of care the law imposes on a driver entering a highway from a "private road, driveway, alley or building." LSA-R.S. 32:124; Code of The City of New Orleans, Sec. 38-100.
The only instruction the trial judge gave on this issue was a general one to the effect that the parties had a duty to see what they should have seen. Such a general instruction could apply to virtually any traffic situation. It fails to inform the jury that Mr. Carmen had a greater duty of care than someone already proceeding in the right of way. This constitutes reversible error. The defendant is entitled to a trial de novo by this Court.
The import of LSA-R.S. 32:124 and Code of the City of New Orleans Section 38-100 as applied to this case is that the plaintiff had a heightened duty of care to watch for vehicles and pedestrians when he emerged from the garage.[1]
It is not error for a trial judge to refuse to give a requested special charge where such charge is included in his general charge. Haynes v. Baton Rouge General Hospital, 298 So.2d 149 (La.App. 1 Cir.1974); Morales v. Toye Bros. Yellow Cab Co., 246 So.2d 52 (La.App. 4 Cir.1971), writ refused, 258 La. 772, 247 So.2d 867 (La.1971); Bourgeois, supra. In the instant case the general charge failed to include the standard of care required by law. If instructions concerning negligence and liability omit an applicable essential legal principle, such instructions constitute reversible error. Gonzales v. Xerox Corporation, 320 So.2d 163 (La.1975).
The failure of the trial court to charge the jury concerning plaintiff's statutorily mandated duty of care is compounded by the fact the trial judge charged the jury very clearly with the duty of care required of the defendant:
The driver of an automobile proceeding over that portion of a roadway ordinarily used by vehicles going in opposite direction must keep a vigilant watch for vehicles or pedestrians and exercise all reasonable care. And in the case of an accident, shall be presumed to have seen what he should have seen in performance of his duties. Where a motorist drives on the left side of a road and has a causal connection with an accident resulting therefrom constitutes negligence.
Such one sided instructions must be presumed to have influenced the jury in determining that defendant was 100% at fault. The defendant is entitled to a trial de novo. Guilfore v. D.H. Holmes Co., Ltd., 631 So.2d 491 (La.App. 4 Cir.1994); Slay v. Quarles Drilling Co., 534 So.2d 1300 (La.App. 4 Cir. 1988), writ denied 536 So.2d 1235 (La.1989).
III. The Negligence Of The Defendant Was The Sole Cause Of The Accident.
Counsel for the defendant does not dispute that he was negligent in failing to drive on the right side of the road as required by statute of City ordinance. He only argues that plaintiff's negligence was also a cause of the accident and that any award to *1112 the plaintiff should be reduced proportionately. This Court does not agree.
Our independent review of the record convinces us that the defendant not only failed to keep to the right, but that he was exceeding the 15 m.p.h. speed limit.
We are convinced that the plaintiff exercised all of the care and caution required of him before emerging from the garage and that the accident would not have occurred had the defendant been driving on the right side of the road at a proper rate of speed. The fact that the speed limit at the place where the accident took place is 25% less than is allowed in school zones should have been an indication to the plaintiff of the greater than normal care that he should have exercised while driving in that area. Under such conditions Mr. Gonzalez's failure to keep to the right and stay within the speed limit is particularly egregious.
Therefore, based on our independent de novo review of the record we reach the same conclusion as that reached by the jury below and find that the defendant's negligence was the sole cause of the accident.
IV. We Agree With The Amount Of Damages Awarded By The Jury.
The jury awarded the plaintiff $200,000 which included stipulated property damage of $2,762.96 and medical expenses up to the date of trial of $4,039.00.
We do not believe that Dye v. Schwegmann Supermarkets, Inc., 607 So.2d 564 (La. 1992), rehearing denied, 609 So.2d 248 (La. 1992), requires an appellate court to ignore those jury findings that were untainted by the erroneous instructions. Vicknair v. Dimitryadis, No. 93-CA-0003, 1994 WL 7701 (La.App. 4 Cir.1994). The erroneous jury instruction related only to liability, not damages. In any event, as in Vicknair "... we do not differ greatly with the jury findings as to damages, and whether we review the jury's damage award under a manifest error standard or independently, we reach the same result." [Emphasis added].
Future medical expenses must be established with some degree of certainty. Mistich v. Pipelines, Inc., 609 So.2d 921 (La.App. 4 Cir.1992), writ denied, 613 So.2d 996 (La.1993), cert. denied, ___ U.S. ___, 113 S.Ct. 3020, 125 L.Ed.2d 709 (1993). However, an award of future medical expenses is in great measure highly speculative and not susceptible of calculation with mathematical certainty. Id. Future medical expenses will be awarded where there is medical testimony that future medical expenses are indicated, and the medical testimony sets out the probable future medical costs. Poche v. Frazier, 232 So.2d 851 (La.App. 4 Cir. 1970), application denied, 256 La. 266, 236 So.2d 36 (1970). Plaintiff established that more probably than not he would require future surgery which would cost over $30,000. Dr. Billings testified that plaintiff is "a candidate for surgery at this time and that such surgery would be called for at such time as plaintiff's pain got worse." The defendants' doctor, Dr. Williams, also testified that surgery was called for if plaintiff's pain got worse. As this Court stated only recently in Davis v. Kreutzer, 633 So.2d 796 (La.App. 4 Cir., Feb. 25, 1994), when faced with strikingly similar medical testimony:
There is ample evidence in the record to establish that, more probably than not, such medical treatment will be undertaken in the future.
Mr. Carmen sustained a laceration to the forehead, requiring sutures, which left a permanent scar and indentation in his forehead. He sustained disc herniation at two levels and aggravation of preexisting disc problems. He is frequently required to take Motrin for pain in prescription strength doses and can be expected to continue to do so. As the result of future surgery he can be expected to miss three to six months of work; he will not be able to stand or sit continuously for more than an hour; he will not be able to work overhead or with his arms out in front; and he will be unable to look more than thirty degrees up to the vertical.
Based upon our review of the record we agree with the amount awarded by the jury.
For the foregoing reasons the judgment of the trial court is affirmed.
AFFIRMED.
NOTES
[1] Bishop v. Shelter Ins. Co., 461 So.2d 1170 (La. App. 3 Cir.1984), writ. den. 465 So.2d 737 (La. 1985) and Garrett v. Universal Underwriters, 586 So.2d 727 (La.App. 3 Cir.1991) are inapposite. Those cases did not involve the duty of care imposed by LSA-R.S. 32:124 and Code of the City of New Orleans Sec. 38-100.